Fourth Division

August 21, 2003

No. 1-02-2287

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. ) No. 02 CR 1689

)

MARVIN TERRY, ) The Honorable

) Rodolfo Garcia,

Defendant-Appellee. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Marvin Terry was charged with three counts of the Class 2 felony of harassment of a witness and family members of a witness under section 32-4a(a)(2) of the Criminal Code of 1961.  720 ILCS 5/32-4a(a)(2) (West 2002).  Defendant moved to dismiss the indictment, pursuant to section 114-1(a)(8) of the Code of Criminal Procedure of 1963, alleging that it failed to state an offense.  725 ILCS 5/114-1(a)(8) (West 2002).  After considering both the written and oral arguments presented by the parties, the trial court granted defendant's motion.  The State filed a motion to reconsider.  Upon reconsideration, the trial court confirmed the dismissal.  The State now appeals, arguing that the trial court misinterpreted section 32-4a(a)(2) and therefore erred by dismissing the indictment.  

The main issue on appeal is whether section 32-4a(a)(2) protects a person from being harassed
 after 
a legal proceeding has concluded, when that person was identified as a potential witness in discovery responses but was never called to testify during the case because the defendant pleaded guilty.  For the reasons that follow, we find that the statute does not confer such protection.  Therefore, we affirm the trial court's dismissal of the indictment.

To begin, we note that this court was provided with very little information regarding the background of this case.  The following facts, however, have been gleaned from the record and provide a rough account of the events leading up to this appeal.

At some time prior to the date of the alleged harassment, defendant was charged with aggravated battery, in case No. 01 CR 129850, entitled People v Terry.  The victim of the battery, Edgar Rodriguez, Jr., and his sister, Danielle Rodriguez, were identified as potential witnesses in the State's responses to defendant's requests for discovery.  Edgar and Danielle were never called to testify in the case, however, because defendant pleaded guilty.  

As a result of defendant's plea, he was convicted and sentenced to a term of imprisonment.  He was subsequently released on parole.  The State alleges that, on January 2, 2002, defendant encountered Danielle and her mother, Marlene Rivera, for the first time since his release.  The State further alleges that, during that encounter, defendant drove alongside the women, yelling "Trick, trick, trick" while pointing at them, intending to harass or annoy them.  Defendant was arrested the following day and, in a three-count indictment, was charged with "the offense of Harassment of representatives for the child, jurors, witnesses and family members of representatives for the child, jurors, and witnesses."  Specifically, the first count of the indictment charged that defendant: 

"with intent to harass or annoy Marlene Rivera, a family member, to wit:  mother of Edgar Rodriguez Jr. a person who has served as a potential witness in a legal proceeding, to wit:  
People of the State of Illinois v. Marvin Terry et. [
sic
] al.
 01 CR129850, because of the potential testimony of Edgar Rodriguez Jr., communicated directly with the family member of Edgar Rodriguez Jr[.], Marlene Rivera, to wit:  pointed at and yelled 'Trick, trick, trick' in such a manner as to produce mental anguish or emotional distress to Marlene Rivera ***."

The second and third counts charged defendant with the same conduct – alleging, however, that it was directed at Danielle, both as a family member of "a person who has served as a potential witness in a legal proceeding" and as "a potential witness in a legal proceeding."  Each count of the indictment cited "Chapter 720 Act 5 Section 32-4a(a)(2) of the Illinois Compiled Statutes 1992 as amended," as the relevant statute.
(footnote: 1)   

Section 32-4a(a)(2) provides:

"A person who, with intent to harass or annoy one who has served or is serving or who is a family member of a person who has served or is serving (1) as a juror because of the verdict returned by the jury in a pending legal proceeding or the participation of the juror in the verdict or (2) as a witness, or who may be expected to serve as a witness in a pending legal proceeding, because of the testimony or potential testimony of the witness, communicates directly or indirectly with the juror, witness, or family member of a juror or witness in such manner as to produce mental anguish or emotional distress or who conveys a threat of injury or damage to the property or person of any juror, witness, or family member of the juror or witness commits a Class 2 felony."  720 ILCS 5/32-4a(a) (West 2002).  

On March 1, 2002, defendant moved to dismiss the indictment, arguing that it failed to state an offense.  The trial court granted defendant's motion, explaining: 

"As made clear by the language of the offense, the statute seeks to protect two classes of individuals that may serve as witnesses, as well as their family members: (1) A person that has served or is serving as a witness and (2) a person that may be expected to serve as a witness.  In the first instance, the person must be a witness.  This covers a person that has already testified in a proceeding already concluded and a person that may be waiting to be called in a matter currently on trial.

In the second instance, the person must be someone expected to serve as a witness in a pending legal proceeding.  This apparently addresses a legal proceeding still in the pretrial stages.  As made clear by the legislative history this would cover individuals named in the witness lists provided by each side.  It is clear, however, that a person is a potential witness only while there is 'a pending legal proceedings [
sic
]' as set out by the language of the statute.

In the case at bar, based on the State's Response, no one actually took the stand in the underlying criminal matter as defendant pleaded guilty.  As such, there is no individual that can fall within the first class of protected individuals.  That is, there is no individual that 'served or is serving as a witness.'  Although there were certainly individuals that were potential witnesses, by the clear language of the statute in order to fall within the second class of protected individuals there must be a 'pending legal proceeding.'  There is no such 'pending legal proceeding' as the legal proceeding concluded by defendant's plea of guilty."

The crux of the dispute in this appeal is whether the indictment sufficiently sets forth each of the required elements of the offense of harassment of a witness – specifically, whether the alleged victims fall within a class protected by section 32-4a(a)(2).  The State takes the position that, because Edgar and Danielle assisted the police and the prosecutors in their investigation and probably would have testified if defendant had not pleaded guilty, they "served as" witnesses and were protected under the statute despite the fact that defendant's case was no longer pending.  We find the State's interpretation untenable inasmuch as it contradicts the plain language of the statute and is unsupported by the legislative history of the statute.

We begin our analysis by addressing the trial court's authority to dismiss an indictment.  Section 114-1(a)(8) provides that, upon the written motion of the defendant made prior to trial before or after a plea has been entered, the court may dismiss an indictment, information or complaint if the charge does not state an offense.  725 ILCS 5/114-1(a)(8) (West 2002).  To sufficiently allege the commission of an offense, the indictment must: (1) state the name of the offense; (2) cite the statutory provision alleged to have been violated; (3) set forth the nature and elements of the offense charged; (4) state the date and county of the offense; and (5) state the name of the accused. 725 ILCS 5/111-3(a) (West 2002).  The purpose of section 111-3 is to inform the accused of the nature of the offense with which he is charged so that he may prepare a defense and to assure that the charged offense may serve as a bar to subsequent prosecution arising out of the same conduct.  
People v. Meyers
, 158 Ill. 2d 46, 51-52 (1994).  If the charging instrument omits an element of an offense with which the accused is intended to be charged, the instrument fails to state a criminal offense.  
People v. Jones
, 288 Ill. App. 3d 293, 296 (1997).  An appeal from the dismissal of an indictment requires the reviewing court to determine, 
de novo
, whether the complaint complies with the aforementioned statutory requirements.  See 
People v. Smith
, 259 Ill. App. 3d 492, 495, (1994).   

It is clear from the indictment that the State sought to charge defendant with the offense of harassment of a witness, pursuant to section 32-4a(a).  Thus, it is our task to determine whether the State sufficiently alleged in the indictment each of the elements of that offense.  Specifically, we must address whether the indictment alleges that the victims are among those whom the legislature sought to protect when enacting this statute.  

We look first to the statute to determine who falls within its range of protection.  Where the statutory language is clear and unambiguous, its plain meaning should be given effect.  
People v. Whitney
, 188 Ill. 2d 91, 97 (1999).  The language of section 32-4a(a), as it pertains to witnesses, confers protection from harassment upon a person if he or she: (1) has served as a witness; (2) is serving as a witness; (3) is a family member of person who has served as a witness; (4) is a family member of a person who is serving as a witness; (5) may be expected to serve as a witness in a pending legal proceeding; or (6) is family member of a person who may be expected to serve as a witness in a pending legal proceeding.  720 ILCS 5/32-4a(a)(2) (West 2002).   

Looking next to the indictment, we consider the plain and ordinary meaning of its language as read and interpreted by a reasonable person.  See 
People v. Wilkenson
, 262 Ill. App. 3d 869, 873 (1994).  The plain language of the indictment identifies the alleged victims as either "a person who has served as a potential witness in a legal proceeding" or as a family member of "a person who has served as a potential witness in a legal proceeding."  As read and interpreted by a reasonable person, the plain and ordinary meaning of "potential witness," seems to identify a person "who may be expected to serve as a witness."  The State suggests, however, that the adjective "potential," as it is used in the indictment, is essentially surplusage, and that the term "witness," without the modifier "potential," actually describes Edgar and Danielle.  Relying on this argument, the State declined to amend the indictment, stating the following to the trial court:  

"If the gravemen [
sic
] of this problem [
sic
] the term potential, I would be willing to go back to the grand jury and ask for an indictment that doesn't have the word potential in it.  

***

It's our position that Danielle Rodriquez
 and Marlene Rivera served as witnesses even though they never testified.  I admit they didn't testify, and I admit that proceeding is concluded.  My position is that they served as witnesses despite the fact they never testified.

And I believe as I put in my response, if the legislature wanted to equate testimony with witnesses, they could have drafted that legislation a much more succinct fashion than they did.  I submit the reason it's drafted the way it is because it does protect a person who never testified even though that proceeding has come to an end."

In essence, the State argues that the legislature intended the phrase "one who has served as a witness" to encompass a person who was named in discovery responses but was never called to testify.  If this interpretation truly reflects the legislature's intent, the indictment would indeed allege victims who fall within the ambit of the statute's protection and would survive a motion to dismiss.  However, if the legislature did not intend such an interpretation, the indictment would fail.  As such, resolution of the main issue in this appeal hinges on statutory interpretation.  Specifically, we must determine what the legislature intended by its use of the phrases "
has served as a witness" and "may be expected to serve as a witness." 

To determine legislative intent, we look first to the plain language of the statute.  
People v. Whitney
, 188 Ill. 2d 91, 97 (1999).  The plain language of the statute reveals that the legislators intended to treat a person who "has served as a witness" as a separate entity from a person "who may be expected to serve as a witness" – otherwise the statute would be absurdly redundant.  This intent is further revealed by the legislative history of this case.  

Prior to its amendment in 1994, section 32-4(a) provided as follows:

"A person who, with intent to harass or annoy one who has served as a juror or as a witness in a legal proceeding, because of the verdict returned by the jury therein or the participation of such juror in the verdict or because of the testimony of such witness, communicates directly or indirectly with the juror or witness in such manner as to produce mental anguish or emotional distress or who conveys a threat of injury or damage to the property or person of such party or witness or to the property or person of any relative of such party or witness commits a Class 4 felony."  Ill. Rev. Stat. 1991, ch. 38, par. 32-4a.

However, prompted by concerns from the Illinois State's Attorney's Association arising from gang cases, the legislature proposed to amend the statute to protect not only a person who "has served" or "is serving as a witness," but also a person who "may be expected to serve as a witness in a pending legal proceeding."  88th
 Ill. Gen. Assem., House Bill 1452, 1994 Sess.  

We find that the legislature intended to attach different, and mutually exclusive, meanings to the phrases "has served as a witness" and "may be expected to serve as a witness" – otherwise, the 1994 amendment would have been meaningless.  Thus, it is our next task to determine which one encompasses the alleged victims named in the indictment.  To make this determination, we again look to legislative intent.  In this instance, it is not readily apparent from the plain language of the statute into which group the legislature intended for a person named in discovery responses but who did not testify to fall.  Thus, we look to extrinsic aids – namely, the legislative debates.  

The debates in this case reveal that, when adopting the amendment, the legislators intended for a person who is named as a witness in discovery responses to be considered a "potential witness," and for that person to be protected by the new provision for a "person who may be expected to serve as a witness."  Consider the following colloquy:

"[Representative] Dart: House Bill 1452 would attempt to give potential witnesses the same protection that are afforded under the law to witnesses.  This was proposed by the Illinois State's Attorney's Association, and I move for its passage.

*  *  *

[Representative] Wennlund: Could you tell the Ladies and Gentlemen of the House, how is a person to determine who a potential witness is?

[Representative] Dart: Usually it's done quite easily through the . . .by going through a Motion for Discovery which is done at the initial stage of the trial.  At that point, each side is required to list its potential witnesses who they may or may not call to testify in the proceeding.  It's a document that's filed with the court that each party exchanges and that would be what they're working off of. 

*  *  *

[Representative] Dart:***[S]o this would deal with the ones who potentially would be there who may not actually testify 'cause they had somebody else who testified to the exact same things.  So the State's Attorney pulled it out of the record or did not put that witness on, and this would attempt to provide them the same protections because in a lot of these gang incidents that we've been facing lately, especially in Chicago, you have a lot of instances where witnesses are being threatened and they will not come forth and testify then.  This would say that the witness, even though he physically does not testify in the case, if he is there as a witness, potentially going to testify, but he is afforded those same protections.  This has been proposed by the State's Attorney Association because of the problems they've been facing in regard to this; namely gang cases."  88th
 Ill. Gen. Assem., House Proceedings, April 20, 1993, at 71-73 (statements of Representatives Dart and Wennlund). 

As potential witnesses who were named in discovery responses, Edgar and Danielle clearly fall among the legislature's definition of those "who may be expected to serve" as witnesses.  As such, they cannot also be considered among those who have "served as" witnesses under section 32-4a(a).  

Having determined that the legislature intended for persons such as Edgar and Danielle to be protected by the 1994 amendment, we look back to plain language of the statute to determine the duration of such protection.  We find it clear from the statute that the legislature intended for those "who may be expected to serve as" witnesses to be protected only during the pendency of the legal proceeding.  Thus, in this case, where the State has admitted that the underlying proceeding has concluded, we find that neither Edgar, Danielle, nor their mother falls under the protection of the statute.  Their protection ended when the case concluded. 

The State disagrees, arguing that the legislature could not possibly have intended for potential witnesses to "lose their protection after a case has been adjudicated."  We find, however, that any alleged intent to offer unlimited protection to the potential witnesses is belied by the plain language of the statute, which reveals the drafters' deliberate inclusion of the limiting phrase "pending legal proceeding."     

Thus, in light of the plain language and the legislative history of this statute, it is clear that the legislature intended for persons, such as Edgar and Danielle, who were named in discovery requests as potential witnesses, and their families, to be protected by the statute only during the pendency of the proceedings.  Further, as the State has admitted in this case that the underlying proceeding is no longer pending, the indictment fails to allege a victim who is within the ambit of the statute's protection.  Lacking this essential element of the offense with which the State sought to charge defendant, the indictment was properly dismissed by the trial court.      

We do not intend by our affirmation in this case to undermine what we believe to be a strong policy argument by the State.  We understand the importance of protecting both witnesses and potential witnesses from harassment, even after a case has concluded, particularly in light of the current prevalence of gangs in our neighborhoods.  We cannot rewrite the statute, however, to make it consistent with the court's idea of orderliness and public policy (
Lawrence v. Regent Realty Group, Inc.
, 197 Ill. 2d 1, 11 (2001)), and to interpret the statute as conferring unlimited protection upon Edgar, Danielle and their mother would require us to read in the words "who may 
have been
 expected to serve as a witness in a pending legal proceeding" or "who may be expected to serve as a witness 
in a legal proceeding
."  Therefore, even though the State's proposed interpretation of the statute might resolve valid policy concerns, we cannot expand the scope of this statute by affirmatively altering its language – particularly because we are required to strictly construe this criminal statute in favor of the accused.  See 
People v. Chandler
, 129 Ill. 2d 233, 254 (1989).   

Affirmed. 

THEIS, P.J., and KARNEZIS, J., concur.

FOOTNOTES
1: The statute cited in the indictment was significantly amended after 1992.  Thus, the statute applicable in this case is indeed different from that cited in the indictment.